UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO. 8:19-cr-259-T-33JSS

JAMES O'BRIEN

**GOVERNMENT'S MEMORANDUM
IN AID OF SENTENCING**

The United States, by and through its undersigned counsel, hereby submits this memorandum in aid of sentencing defendant James O'Brien ("defendant").

**Procedural and Factual History**

On June 18, 2019, defendant pleaded guilty to a four-count information charging him with making false statements to the Department of Defense ("DOD") and the United States Transportation Command ("TRANSCOM") in violation of 18 U.S.C. § 1001(a)(3), in connection with his company's performance on TRANSCOM contracts between on or about January 1, 2013 and on or about December 21, 2015. Defendant admitted to a statement of facts that was included with the written plea agreement. Doc. 2.

## Government's Recommendations

Per the plea agreement, the government agreed to recommend an adjusted offense level of 12 under the advisory Sentencing Guidelines, with a further two-level reduction for acceptance of responsibility. Consistent with its agreement, the government now recommends that the court use an offense level of 10, and a guidelines range of 6-12 months, as the starting point in fashioning an appropriate sentence for defendant.

Under 18 U.S.C. § 3553(a), the Court should consider several factors to determine the appropriate sentence, including: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, (B) to afford adequate deterrence to criminal conduct, (C) to protect the public from further crimes of the defendant, and (D) to provide the defendant with needed correctional treatment; (3) the Sentencing Guidelines; and (4) the need to avoid unwarranted sentence disparities.

For the reasons set forth below, the government recommends that the Court sentence defendant to a period of incarceration at the high end of the advisory guidelines range. Such a sentence is critical to reflect the seriousness of his offenses, to promote respect for the law, to provide just punishment for the offense, and to deter others from committing similar misconduct.

### (1) The nature and circumstances of the offense and the history and characteristics of defendant

Between 2013 and 2015, defendant served as the President and Chief Executive Officer of Tamerlane Global Services ("Tamerlane") and Artemis Global ("Artemis"). Tamerlane and Artemis provided services on U.S. government contracts and were registered in the DOD's Synchronized Pre-Deployment and Operational Tracker ("SPOT") system. SPOT tracks contractors and generates Letters of Authorization ("LOAs") that serve as proof that contractors are authorized to perform services on behalf of the DOD.

Tamerlane and Artemis were frequently authorized to provide services under U.S. government contracts and deployed its employees overseas, including to Afghanistan, to perform those services. Tamerlane and Artemis registered the employees it deployed in SPOT and obtained LOAs on their behalf. However, Tamerlane and Artemis employees were not authorized to utilize any U.S. government-furnished services while deployed, as indicated on their LOAs.

Instead, defendant used a computer program, or other means, to alter the LOAs that SPOT generated to make it appear as if his deploying employees, including himself, were entitled to valuable government-furnished services in Afghanistan, knowing that such services had not been authorized.

The defendant provided the altered LOAs to Tamerlane and Artemis employees or contractors and directed them to present them to officials in Afghanistan as evidence of their purported authorization to utilize valuable government-furnished services (*e.g.* military transportation, meals, accommodations, etc.) at no cost.

Defendant pleaded guilty to making false statements to the United States government. The defendant has a long history of similar behavior that the Court should take into account in fashioning a sentence.

On April 17, 2015, defendant, together with his companies Tamerlane and Artemis, were debarred by the Department of the Air Force for a period of three years from government contracting and from directly or indirectly receiving the benefits of federal assistance programs. Exhibit One, Notice of Debarment, at 1, 3, and 4. The basis for the debarments related to misrepresentations made by defendant, as well as defendant's financial irresponsibility. *Id*.

### a) Misrepresentations

From January 17, 1990, to November 29, 1993, defendant served in the United States Armed Forces. *Id*. at 7. On or about July 7, 1992, defendant absented himself from his unit without leave. *Id*. Defendant did not voluntarily return to his unit; instead, he was caught issuing bad checks on or about October

4

21, 1993. *Id*. On November 5, 1993, defendant was charged with one count of Unauthorized Absence in violation of Article 86 of the Uniform Code of Military Justice. *Id*. Defendant requested that he be allowed to resign in lieu of prosecution and this request was granted. *Id*. Defendant was discharged on November 29, 1993, with a service characterization of Under Other than Honorable Conditions. *Id*. As a result of his discharge status, defendant is prohibition under 15 U.S.C. § 632(q)(4) and 38 U.S.C. § 101(2) from claiming that he is a veteran. *Id*. at 8.

Despite this prohibition, defendant held himself out as a veteran and certified from April 12, 2013 to April 12, 2014 that Tamerlane was a veteran-owned small business on the military's System for Award Management ("SAM"). *Id*. at 7-8. Similarly, Artemis falsely stated on its website that it was a veteran-owned business. *Id*.

 b) **Financial Irresponsibility**

As mentioned above, defendant was also debarred for being financially irresponsible, related to three outstanding civil judgments against Tamerlane totaling approximately $3,000,000, which Tamerlane stated it had no way of paying.

In *Global Hub Logistics v. Tamerlane Global Services, Inc., et al.*, (12-cv-1350), filed in the United States District Court for the Eastern District of Virginia on

5

or about October 28, 2013, a jury found that Tamerlane had breached its contract with the plaintiff and awarded damages in the amount of $1,937,559. Exhibit Two, Global Judgement. The finding was based on Tamerlane's failure to perform its portion of a contract, and defendant's repeated lies to plaintiff about Tamerlane's performance.

In *STL Emirates Logistics, LLC v. Tamerlane Global Services, Inc.,* (14-cv-51), filed in the United States District Court for the Eastern District of Virginia on December 12, 2014, the court granted plaintiff's motion for default judgment and found Tamerlane liable for breach of contract. Exhibit Three, STL Emirates Logistics LLC Judgement. The court ordered Tamerlane to pay $208,659.04 plus pre-judgement interest and attorney fees to STL Emirates Logistics. *Id*.

In *Tigers Limited v. Tamerlane Global Services and Artemis Global, Inc.*, (15-cv-947), filed in the United States District Court for the Eastern District of Virginia on July 14, 2016, a jury found for plaintiff and awarded damages in the amount of $500,000 from Tamerlane and $500,000 from Artemis. Exhibit Four, Tiger Judgement. That case was also based on Tamerlane's and Artemis's failure to perform on a contract, and defendant's repeated lies about his companies' performance.

Defendant has two previous criminal convictions that should be considered. On May 31, 2012, defendant was sentenced to 90 days'

imprisonment, suspended on the condition of one year of supervised probation, for reckless driving. More recently, the defendant was sentenced on November 20th, 2017 to 60 days' imprisonment, suspended, for carrying a concealed weapon following his participation in an event in Charlottesville, Virginia in August of 2017. *Id.*

Defendant is a scofflaw with a criminal record, and a history of lying to the government and his business partners when it suits his interests. Neither administrative remedies taken by the Armed Forces (allowing him to resign in lieu of prosecution and debarment), nor civil judgments in his myriad lawsuits, has changed his behavior. Accordingly, a period of incarceration is an appropriate sentence.

> **(2) The need for the sentence imposed – (A) to reflect the seriousness of the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed correctional treatment**

The defendant committed serious offenses by falsifying DOD and TRANSCOM documents, especially in light of his position as CEO of his companies. A sentence at the high end of the advisory Sentencing Guidelines range is needed to provide just punishment for the offense. The defendant used his position within a private sector company to obtain these services for himself and his employees, and to defraud the United States government. Such a

sentence would help provide appropriate punishment and send a deterrent message to other contractors engaged in similar work that they must be honest in their dealings with the U.S. government.

In the current age, U.S. government agencies, including the U.S. military, work very closely with private contractors such as defendant in order to implement U.S. policies in warzone areas. In this case, among other things, the defendant falsified documents that only were provided to authorized private companies engaged in helping to rebuild Afghanistan. Criminal conduct by the defendant and others like him in this context in Afghanistan affects the U.S. reconstruction efforts there and the reputation of the U.S. as it seeks to demonstrate legitimate business practices. The defendant sought to capitalize on the circumstances within the Afghanistan warzone to facilitate his criminal activity and gain an advantage over his competitors. Defendant clearly has a history of lying to get what he wants and a sentence at the high end of the Guidelines should specifically deter him from behaving similarly in the future.

A sentence at the high end of the Guidelines range is also critical to deter others from committing or contemplating committing white collar crimes while working with U.S. government agencies in Afghanistan. General deterrence is of particular importance in white collar cases such as this as other would-be offenders need to be put on notice that there are severe consequences for

engaging in this type of criminal conduct. *See, e.g., United States v. Musgrave*, 761 F.3d 602, 609 (6th Cir. 2014) ("Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence") (citation and internal quotation omitted); *United States v. Goffer*, 721 F.3d 113, 132 (2nd Cir. 2013) (addressing the need for general deterrence for those who might otherwise feel that some white-collar crimes are "games worth playing").

### (3) Sentencing Guidelines

As noted above, the government agreed to recommend an adjusted offense level of 12 under the advisory Sentencing Guidelines, with a two-level reduction for acceptance of responsibility. Consistent with that agreement, the government now recommends that the Court use an offense level of 10 as the starting point in fashioning an appropriate sentence for defendant. This offense level is the result of the following: (1) a base offense level of six; (2) a six-level increase for total intended loss to the government of more than $40,000, but less than $95,000; and (3) a 2-level reduction for acceptance of responsibility by the defendant. The Criminal History category is I. The advisory guidelines range based on this calculation is 6-12 months in Zone B. The applicable fine range is $4,000 to $40,000.

## Conclusion

In consideration of the relevant sentencing factors discussed above, the government recommends that the Court impose a sentence at the high end of the advisory guidelines range of 6-12 months. *See United States v. Gall*, 552 U.S.38, 51 (2007) ("[i]f the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness"); *United States v. Dorcely*, 454 F.3d 366, 376 (D.C. Cir. 2006) ("a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness").[1]

The government does not request that restitution be paid to the DOD or TRANSCOM, nor does the government request an order of forfeiture.

The government accepts the findings by the Probation Office that given the defendant's financial profile, the possibility of incarceration, and the burden that a court-ordered fine might place on the defendant and his family (especially

---

[1] On the other hand, a "sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." *Rita v. United States*, 551 U.S. 338, 351 (2007); *see United States v. Settles*, 530 F.3d 920, 924 (D.C. Cir. 2008). Rather, the Court must consider the Guidelines as one factor in its consideration of the factors under 18 U.S.C. § 3553(a), *see Settles*, 530 F.3d at 924-25, as the government does above.

given his arrearage in court-ordered child support), it appears that he does not have the ability to pay a fine. In these circumstances, the government defers to the Court as to the amount of a fine, if any, defendant should pay.

    Respectfully submitted,

    MARIA CHAPA LOPEZ
    United States Attorney

    ROBERT A. ZINK
    Chief, Fraud Section
    Criminal Division
    United States Department of Justice

    */s/ Michael P. McCarthy*
    Michael P. McCarthy
    Trial Attorney, Fraud Section
    Criminal Division
    United States Department of Justice

    */s/ Craig R. Gestring*
    Craig R. Gestring
    Assistant United States Attorney
    Florida Bar No. 19106
    400 N Tampa Street, Suite 3200
    Tampa Florida  33602
    Telephone: (813) 274-6000
    E-mail:Craig.Gestring@usdoj.gov

    */s/ Jay G. Trezevant*
    Jay G. Trezevant
    Assistant United States Attorney
    Florida Bar No. 0802093
    400 N. Tampa Street, Suite 3200
    Tampa, Florida 33602-4798
    Telephone: (813) 274-6000
    E-mail: jay.trezevant@usdoj.gov

U.S. v. JAMES O'BRIEN                    Case No. 8:19-CR-259-T-33JSS

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

    Augustus Invictus, Esq.

                                              /s/
                                Michael P. McCarthy
                                Trial Attorney, Fraud Section
                                Criminal Division
                                United States Department of Justice