UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                           CASE NO. 8:19-cr-259-T-33JSS

JAMES O'BRIEN

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Comes now the Defendant, James O'Brien, by and through undersigned counsel, and submits this memorandum in aid of his sentencing.

### Preliminary Statement

On 18 June 2019, James O'Brien pleaded guilty to four counts of false statements, in violation of 18 U.S.C. § 1001(a)(3). Mr. O'Brien is currently scheduled for sentencing on 16 September 2019. Mr. O'Brien has never been arrested and has lived at his home in Virginia throughout the entirety of these proceedings.

This Sentencing Memorandum is submitted on behalf of Mr. O'Brien in support of a sentence "sufficient, but not greater than necessary" to achieve the statutory purposes of punishment as required by 18 U.S.C. § 3553(a)(2). In this instance, a sentence of twelve months' probation is appropriate.

### Sentencing under *Booker*

The 18 U.S.C. 3553(a) factors weigh in favor of a below guideline sentence. *United States v. Booker,* 543 U.S. 220, 226 (2005), held that the mandatory application of the United States Sentencing Guidelines is a violation of the Sixth Amendment.

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by *Booker*, requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp.2004), but it permits the Court to tailor the sentence in light of other statutory concerns as well, see § 3553(a). *Booker*, 125 S. Ct. at 757. Thus, under *Booker*, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a).

The primary directive in Section 3553(a) is for sentencing courts to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2. Section 3553(a)(2) states that such purposes are:

(a)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(b)     to afford adequate deterrence to criminal conduct;
(c)     to protect the public from further crimes of the defendant; and
(d)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, § 3553(a) further directs sentencing courts to consider the following factors:

(a)     The nature and circumstances of the offense and the history and characteristics of the defendant [§ 3553(a)(1)];
(b)     The kinds of sentences available [§ 3553 (a)(3)];
(c)     The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct [§ 3553 (a)(6)]; and
(d)     The need to provide restitution to any victims of the offense. [§ 3553 (a)(7)].

Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based

on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is *not* an appropriate means of promoting correction and rehabilitation" (emphasis added).

Under 18 U.S.C. § 3661, "*No limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added).

This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as not ordinarily relevant to sentencing. A variety of factors may be considered, such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. *See* U.S.S.G. § 5H 1.

The directives of *Booker* and § 3553(a) make clear that courts may no longer uncritically apply the guidelines. Such an approach would be inconsistent with the holdings of the merits majority in *Booker*, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in *Booker*, directing courts to consider all of the § 3353(a) factors, many of which the guidelines either reject or ignore. *United States v. Ranum*, 353 F. Supp. 2d 984, 985-86 (E.D. Wisc. Jan. 19, 2005 ) (Adelman, J.). As another district court judge has correctly observed, any approach which automatically gives heavy weight to the guideline range comes perilously close to the mandatory regime found to be constitutionally infirm in *Booker*. *United States v. Jaber*, 362 F. Supp. 2d 365, 371 (D. Mass. March 16, 2005) (Gertner, J.). See also *United States v. Ameline*, 400 F.3d 646, 655-56 (9th Cir. Feb. 9, 2005) (advisory guideline range is only one of

many factors that a sentencing judge must consider in determining an appropriate individualized sentence), *reh'g en banc granted*, 401 F.3d 1007 (9th Cir. 2005).

Justice Scalia explains the point well in his dissent from *Booker*'s remedial holding:

> Thus, logic compels the conclusion that the sentencing judge, after considering the recited factors (including the guidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range. If the majority thought otherwise, if it thought the Guidelines not only had to be considered (as the amputated statute requires) but had generally to be followed, its opinion would surely say so.

*Booker*, 125 S. Ct. a t 791 (Scalia, J., dissenting in part). Likewise, if the remedial majority thought the guidelines had to be given heavy weight, its opinion would have said so. The remedial majority clearly understood that giving any special weight to the guideline range relative to the other Section 3553(a) factors would violate the Sixth Amendment.

In sum, in every case, a sentencing court must now consider all of the § 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. And where the guidelines conflict with other sentencing factors set forth in § 3553(a), these statutory sentencing factors should generally trump the guidelines. See *United States v. Denardi*, 892 F.2d 269 , 276-77 (3 d Cir. 1989 ) (Becker, J, concurring in part, dissenting in part) (arguing that since § 3553(a) requires a sentence be no greater than necessary to meet the four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range).

Therefore, a sentencing court is required to consider the advisory sentencing guideline range along with the statutory factors set forth in 18 U.S.C. § 3553(a), specifically (1) the offense and offender characteristics; (2) the need for the sentence to reflect the basic aims of sentencing, namely, (a) "just punishment" (retribution), (b) deterrence, (c) incapacitation, (d) rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need for restitution. 18 U.S.C. § 3553(a); *see also Rita v. United States,* 551 U.S. 338, 347-48 (2007). Here, each of these factors militates toward sentencing Mr. O'Brien to a term of probation.

**Application of the Statutory Sentencing Factors to the Facts of this Case**

In the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

### A. Background and History of Mr. O'Brien

Several factors concerning the background of Mr. O'Brien should be considered in sentencing, including the circumstances that have befallen him since the underlying facts of this case, his conduct in the past several years, up to and including the present proceedings, and his present health and home life.

The Government notes in its Memorandum in Aid of Sentencing that Mr. O'Brien was debarred because of the circumstances surrounding his contracts in Afghanistan. This is only one of the devastating circumstances that have befallen Mr. O'Brien as a result of these contracts. The civil litigation also devastated Mr. O'Brien financially. Between

being wiped out by civil litigation and being debarred so that he could no longer work in his chosen profession, Mr. O'Brien's fortunes have necessarily taken a drastic turn for the worse in the past several years. The fact that Mr. O'Brien is in his mid-forties makes a successful career transition under these circumstances unlikely.

In the intervening years, Mr. O'Brien did not work in this profession, and he has never re-offended. He has two misdemeanor convictions, one for reckless driving and one for possession of a concealed weapon without a concealed carry permit (which permit he had applied for, and which was obtained thereafter), but has no felony convictions. He is a businessman, not a hardened criminal.

Having been cooperative in the plea agreement process, Mr. O'Brien was never arrested in this matter. Upon entering a plea of guilty he was released on his own recognizance, without objection from the Government. He has had no new arrests or warrants since entering his plea. Mr. O'Brien has resided at his home in Virginia for the entirety of these proceedings. In all this time he has remained compliant with all bond conditions and all orders of the Court. He has been a model citizen for pretrial services.

Also to be considered are several health problems that have arisen that were not present when Mr. O'Brien was in Afghanistan. The first is a transient ischemic attack, also known as a mini-stroke, due to a narrowing carotid artery, which attack Mr. O'Brien suffered in March of this year. This is being managed by a neurologist in Jacksonville. The second is a condition called cardiomegaly, which puts Mr. O'Brien at high risk of a heart attack. This, too, is being treated in Jacksonville. See Exhibit 1, University of Florida Medical Report by Dr. Edgar Alvarez.

Moreover, Mr. O'Brien's home life is such that incarceration would place an undue burden on his wife and three children. Mr. O'Brien and his wife have been living in Virginia temporarily for work purposes, and they are presently relocating to Jacksonville, Florida. Of his three daughters, one, age 17, is applying to college, and two, ages 5 and 7, are already undergoing the psychological and emotional distress of a custody dispute. All three would be greatly harmed by their father's imprisonment, considering both the emotional aspect of fatherhood and the financial aspect of child support. As an added burden, Mr. O'Brien acts as executor to his late mother's estate, which business is expected to last the better part of a year. Incarceration renders the satisfaction of all of these familial responsibilities impossible.

### B. Nature and Circumstances of the Offense

The false statements at issue in this case were in the form of Letters of Authorization (LOAs) made to the Department of Defense and TRANSCOM in Afghanistan. These LOAs were issued by Mr. O'Brien to employees of Tamerlane and Artemis so that the employees could eat and sleep on base and use military transportation.

While Mr. O'Brien has accepted responsibility for his actions, these things must be considered in context, and it should be kept in mind that these contracts were executed in a war zone. The circumstances of that atmosphere directly affected the employees of Tamerlane and Artemis, as well as Mr. O'Brien's family.

In one instance, a group of Irishmen were the victims of a bombing at their place of residence. Miraculously, they survived, and they made it to the American base. This

incident became one of the determining factors in Mr. O'Brien's use of the LOAs underlying the present case. The Court might also consider that the living arrangements of which Mr. O'Brien's employees availed themselves were not resort-style lodgings, but rather secure places to camp.

Closer to home was the kidnaping of Mr. O'Brien's brother-in-law by Afghans connected to the Federal Bureau of Investigation. This kidnaping was in response to civil litigation between Tamerlane and Global Hub Logistics in the Eastern District of Virginia. Mr. O'Brien's brother-in-law was kidnaped, jailed, and attacked by inmates. See Exhibit B, Afghans Jail U.S. Man in Business Dispute. He was held at ransom for $2.4 million. See Exhibit C, Virginia Beach man freed from Afghan prison. The U.S. Government refused to address the situation, and Mr. O'Brien was left to rescue his brother-in-law on his own. Naturally, this left an indelible mark on Mr. O'Brien, who saw it as his responsibility to protect his employees and his family in Afghanistan.

Concerning the fact that the false statements at issue cost the Government money, Defense would note two things. On the one hand, Mr. O'Brien's work as a contractor in Afghanistan saved the United States Government literally millions of dollars by tracking and stopping theft by bandits, cartels, and rogue tribes. On the other hand, whereas the cost of probation would be borne by Mr. O'Brien, incarceration would cost the Government. Probation makes far more sense than incarceration for all Parties and is the just option.

### C. The Kinds of Sentences Available

Section 3553(a)(2)(A) instructs the Court to craft a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. Here, a sentence of probation reflects the need for a just punishment.

In *Booker*, the Supreme Court severed and excised 18 U.S.C. § 3553(b), the portion of the federal sentencing statute that made it mandatory for courts to sentence within a particular sentencing guidelines range. *Booker,* 125 S. Ct. at 756. This renders the sentencing guidelines advisory. *Id.* 18 U.S.C. § 3551. Between imprisonment and probation, probation is the more appropriate sentence. In the alternative, the Court may sentence Mr. O'Brien to a period of home detention in satisfaction of a sentence of incarceration. U.S.S.G. § 5C1.1(e).

### D. The Sentencing Range Established by the Sentencing Commission

Mr. O'Brien would effectively be denied the advantage of his acceptance of responsibility unless this Court exercises its discretion to depart downward from the guidelines sentence.

Defendant urges the Court to reduce the effective guidelines by subtracting the two levels for acceptance of responsibility and to consider several mitigating factors in sentencing, as described above.

At 12 points, and with a Criminal History of Level I, Mr. O'Brien is in Zone C of the Sentencing Table. A two-level reduction for acceptance of responsibility, however, puts him in Zone B. This is a world of difference, as Mr. O'Brien is eligible for probation in Zone B.

If Mr. O'Brien were to remain in Zone C, he is ineligible for probation, but he can be sentenced to home detention in satisfaction of the requirement of incarceration, because his Criminal History is Level I. See U.S.S.G. § 5C1.1(e).

### E. Proposed Statement of Reasons Pursuant to 18 U.S.C. § 3553(c)(a) for Sentencing Below Guideline Range

Mr. O'Brien has been punished repeatedly since his time in Afghanistan, having been financially devastated by civil litigation and debarment. He has lost his fortune and is unable to continue in his chosen profession. As a result of the present matter, he will be a felon and will be unable to secure employment in any sensitive position. To insist on incarceration five years after the fact, when no allegation whatsoever has been made that he has continued in any like activity since ending operations with Tamerlane and Artemis, would be a punishment far greater than necessary to accomplish the statutory objectives

Mr. O'Brien has three daughters, one of whom is applying to college, and two of whom are little girls already suffering a custody dispute. He is in the process of reestablishing residence in Florida with his wife. The burdens incarceration would place on the women in Mr. O'Brien's family will be greatly lessened by a term of probation.

Mr. O'Brien was never arrested in this matter, and upon entering a plea of guilty he was released on his own recognizance, without objection by the Government. He has had no new arrests or warrants. Mr. O'Brien has resided at his home in Virginia for the entirety of these proceedings. In this time he has remained compliant with all bond conditions and all orders of the Court. He has been a model citizen for pretrial services and is a perfect candidate for probation.

The arc of Mr. O'Brien's life to date suggests conclusively to the Court that there is no reasonable likelihood that Mr. O'Brien will re-offend. He has been debarred as a result of the civil litigation and will become a felon upon sentencing in the present matter. His ability to become a contractor in Afghanistan is clearly and unequivocally neutralized, and there is no chance that Mr. O'Brien will re-offend.

For these reasons and others appearing in this memorandum it is appropriate to grant a variance below the guideline range ultimately arrived at, sentencing Mr. O'Brien only to a term of probation. In the alternative, home detention would satisfy a term of incarceration and would be more appropriate.

### Conclusion

For these reasons, counsel respectfully requests that this Court consider a sentence of twelve months' probation. We submit that such a sentence is sufficient, but not greater than necessary, to comply with the punishment requirements of the Sentencing Reform Act. *See* 18 U.S.C. § 3553(a).

Dated: 11 September 2019                    Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　 /s/ Augustus Invictus
　　　　　　　　　　　　　　　　　　　　Augustus Invictus, Esq.
　　　　　　　　　　　　　　　　　　　　Florida Bar No. 98586
　　　　　　　　　　　　　　　　　　　　The Law Office of Augustus Invictus, P.A.
　　　　　　　　　　　　　　　　　　　　424 E. Central Blvd., Ste. 154
　　　　　　　　　　　　　　　　　　　　Orlando, Florida 32801
　　　　　　　　　　　　　　　　　　　　Phone: 310.824.3725
　　　　　　　　　　　　　　　　　　　　Email: InvictusPA@protonmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on 11 September 2019, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system.


*/s/ Augustus Invictus*
Augustus Invictus, Esq.